# SUPREME COURT OF TEXAS.

## AUSTIN TERM, 1885.

### COOK & McELVEY v. J. G. HALSELL.

(Case No. 5369)

1. CHATTEL MORTGAGES — INDORSEMENT — CONSTRUCTION. — As far as the indorsement of chattel mortgages is concerned, sec. 2, R. S. App., p. 16, requires the clerk merely to note the "time of receiving" the instrument, and if he uses the words "filed for record" at a certain date, the indorsement sufficiently indicates the day on which the paper was received in the office.

2. SAME. — The clerk is required to keep the paper in his office for the inspection of all persons interested, yet he is not required to state all this in his indorsement.

3. EVIDENCE — RECORD. — To prove the registry of a chattel mortgage, the record book containing the entry, or a certified copy of the entry, should be produced; but if no objection is raised in the court below to the introduction of parol evidence to prove the fact of registry, the objection will not be considered for the first time on appeal.

4. MORTGAGE — POSSESSION. — A saloon-keeper gave to plaintiff a mortgage on certain saloon furniture and liquors to secure the payment of a note, the mortgagee continuing in possession of the property, and retailing the liquors and using the furniture in the course of his business as a saloon-keeper. The property, or rather what was left of it, was attached and bought by defendants at the sheriff's sale. A suit was brought against the mortgagor and purchasers to compel payment of the note, and to foreclose the mortgage. *Held:*

　(1) That the mortgagee could leave the mortgagor in possession of the *furniture* without injuring his lien.

　(2) That if it was the intention of the mortgagee to leave the mortgagor in possession of the liquors, and allow him to sell the same in the ordinary course of trade, the mortgage was void as to such articles.

　(3) See facts held insufficient to sustain a verdict against the purchasers for the value of the liquors.

5. REPLEVY — VERDICT. — A verdict against parties who have replevied property should find the value of the various items of property replevied, as they have the right, by the statute, to return the entire property in satisfaction of the payment, or a part of it in satisfaction *pro tanto*. (R. S., art. 4502; Hoeser *v.* Kraeka, 29 Tex.; Blakely *v.* Duncan, 4 Tex.; Bennet *v.* Butterworth, 8 How. U. S., 128.)

APPEAL from Wise. Tried below before the Hon. W. H. Bullock, Special Judge.

This suit was brought by appellee on March 19, 1883, against one Harry May and appellants, J. M. Cook and H. L. McElvey.

The plaintiff alleged that May was indebted to him on a promissory note for the sum of $850, executed by May on the 15th day of February, 1883, and due on the 1st day of September, 1883, with twelve per cent. interest after maturity. May had also, at the time of executing this note, given a chattel mortgage on certain saloon fixtures, supplies and liquors then in one of his saloons in Decatur, Wise county, Texas, to secure the payment of the note. This mortgage was filed with and made a part of plaintiff's petition, and contains a conveyance of the following articles:

One billiard table, one pool table, one bar and counter and fixtures thereto, one lunch stand, counter and shelving, one large mirror, eight pictures, one silver pitcher, twelve demijohns, twelve fancy bottles, twelve dozen bar glasses, including fancy wine glasses, half barrel alcohol, half barrel blackberry brandy, half barrel wine, four barrels T. J. Monarch whiskey, one safe, one beer-cooler, half barrel apple brandy, half barrel peach brandy, half barrel peach and honey, one screen and two chandeliers.

All barrels and parts of barrels of liquors marked thus "H."

It is further alleged in the petition that the defendants, Cook & McElvey, were in possession of the goods, claiming some sort of title thereto, and that plaintiff feared that defendants would remove the property out of Wise county during the pendency of the suit, and upon this ground, and the allegation that plaintiff held a mortgage on the goods, a writ of sequestration was, on the 19th day of March, 1883, sued out and levied upon such of the goods as were found in the possession of Cook & McElvey, which goods so found will be set out specifically hereafter.

Harry May did not answer, but allowed judgment to go against him by default.

The defendants, Cook & McElvey, answered by general denial and by the following special pleas: Denying that they ever had possession of all the goods claimed in plaintiff's petition, and denying their values as alleged, but admitting that they did get possession of the following goods of the values annexed, to-wit:

| | |
|---|---:|
| One billiard table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 50 00 |
| One pool table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 50 00 |
| One safe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 75 00 |
| One lunch stand, counter and shelving . . . . . . . . . . . . . . . . . . . . . . | 50 00 |
| One large mirror . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 50 00 |
| Eight pictures . . . . . . · . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 00 |
| One silver pitcher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 50 |
| Ten demijohns . . · . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 00 |
| Twelve fancy bottles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 00 |

| | |
|---|---:|
| Twelve dozen bar glasses, including fancy glasses | 9 00 |
| Half barrel alcohol, twenty gallons | 46 00 |
| Half barrel blackberry brandy, fifteen gallons | 15 00 |
| Half barrel wine, eighteen gallons | 22 00 |
| One beer-cooler | 35 00 |
| Half barrel apple brandy, ten gallons | 15 00 |
| Half barrel peach brandy | 6 00 |
| Half barrel peach and honey, eleven gallons | 16 50 |
| Two chandeliers | 12 00 |
| Four barrels T. J. Monarch whiskey, 125 gallons | 250 00 |
| The aggregate value being | $812 00 |

They further alleged that they purchased these goods at sheriff's sale on the 16th day of March, 1883. That the same had been attached as the goods of Harry May, at the suit of Casey & Swasey, filed in the District Court of Wise county, and were sold under the order of that court, by the sheriff, in foreclosure of the attachment lien upon them in that case, and the defendants had purchased them at that sale, paid the purchase price to the sheriff, and that the proceeds of the sale had been paid over to Casey & Swasey in satisfaction of their judgment against Harry May, which judgment amounted to the sum of $1,194.80, besides costs. That defendants paid for the goods, together with some others levied on under same writ of attachment, the sum of $1,250.

They further alleged that the mortgage was executed by May and delivered to Halsell with the fraudulent intent and purposes of each, to hinder, delay and defraud the creditors of Harry May, and especially Casey & Swasey, and especially set forth that prior to the execution of this note and mortgage plaintiff had rented the "Glen Hall Saloon" building from the owner thereof, and sublet it to Harry May, and May being unable to pay his license as a retail liquor dealer, Halsell advanced him the sum of $850 to pay the same, and that at the same time a contract was made between them, whereby May was to pay Halsell the rent and repay the advancement in installments covering about a year; and it was further agreed that, in case May should fail to pay the rent, or fail to pay the installments as agreed on, then Halsell should have the right to take possession of the saloon building and stock of goods on hand, pay the debts of the concern due for merchandise, and pay himself, and the balance, if any, to pay over to May; and that Casey & Swasey being informed of this arrangement were thereby induced to extend credit to May, and sold him the goods, for the value of which their attachment suit was brought against the said May. That after the goods were obtained under the arrangement aforesaid, Halsell, disregarding the

contract with May, and designing to hinder, delay and defraud the creditors of May, and prevent them from collecting their debts, took the note and mortgage sued on. That the written contract was in the possession of Halsell, and notice was given to produce it; that as to Casey & Swasey, and as to the defendants, Cook & McElvey, who claim under them, the note and mortgage ought to be postponed and held fraudulent and void.

And further, that the mortgage ought not to be foreclosed against them, because it was made by the owner upon a stock of goods, wares and merchandise daily exposed to sale in parcels in the regular course of the business of such merchandise, and contemplating a continuance of possession of the goods and control of the business by sale of the goods by the owner.

When the goods were levied on under the writ of sequestration they were at once replevied by Cook & McElvey, who gave bond in the sum of $1,650, with Casey & Swasey and Malin, Fowler & Co. as sureties, conditioned as required by law, and the goods were delivered to Cook & McElvey by the sheriff.

The cause was tried by a jury upon these issues on the 29th day of October, 1884, who returned a double verdict as follows:

"We, the jury, find for plaintiff against the defendant, Harry May, the sum of $969.          J. A. WEAKLEY, Foreman.

"We, the jury, find for the plaintiff against the defendants, Cook & McElvey, the sum of $969.          J. A. WEAKLEY, Foreman."

And upon this verdict alone the court rendered judgment in favor of the plaintiff and against Harry May for the sum of $969, with a foreclosure of the mortgage lien upon the goods set forth in the return of the sheriff on the writ of sequestration, and also a distinct and separate judgment against Cook & McElvey, and their sureties on their replevy bond, for the sum of $969, which the court said was "the value of said property as assessed by said jury," and foreclosing the mortgage lien upon the same goods; and the judgment provides that "if the property shall not be delivered to the sheriff within ten days from this date, it is further ordered and adjudged and decreed by the court that the plaintiff, J. G. Halsell, do have and recover jointly and severally of the defendants, J. M. Cook and H. L. McElvey, and their sureties on their replevy bond, the sum of $969, the value of the property as assessed by the jury, and that he have his execution."

*O'Neill, Hunter & Stewart*, for appellants, on the indorsement of the mortgage, cited: Chattel Mortgage act, R. S. App., pp. 15 and

16; Brothers *v.* Mundell, 60 Tex., 240; Jones on Chattel Mortgages, secs. 264, 314; Handley *v.* Howe, 22 Maine, 560; Holmes *v.* Sprowle, 31 Maine, 73; Head *v.* Goodin, 37 Maine, 181.

On the failure of the verdict to fix the value of each article replevied, they cited: R. S., arts. 4490, sec. 3, 4502; 29 Tex., 455; 4 Tex., 185; Bennet *v.* Butterworth, 8 How., 128; Wells on Replevin, sec. 761.

*Crane & Sparkman,* for appellee.

DELANY, J. COM. APP.—The third, fourth and fifth assignments of error will be considered together:

They complain of the action of the court in admitting the mortgage in evidence.

The objections made to it by appellants are thus stated in the brief of counsel:

1. Because filing with the clerk, as provided by law, has not been proved.

2. Because a valid and properly filed and registered chattel mortgage has not been pleaded.

3. Because the clerk's certificate does not show at what time said mortgage was received by him, and that it was filed by him in his office, to be there kept for the inspection of all parties interested.

Upon the back of the instrument is the following indorsement by the clerk:

"STATE OF TEXAS, ⎫ ss.
  Wise County.   ⎭

This instrument was filed for record on the 15th day of February, at the hour of 10 o'clock a. m., 1883, and duly registered in book 'I' of Chattel Mortgages, page 24.     JOHN W. HOGG, Clerk."

Section 2 of the act concerning chattel mortgages (R. S. App., p. 16) is as follows: "Upon the receipt of any such instrument the clerk shall indorse on the back thereof the time of receiving it, and shall file the same in his office, to be kept there for the inspection of all persons interested * * *."

It will be seen that, so far as the indorsement is concerned, the statute requires the clerk merely to note the "time of receiving" the instrument.

And although the clerk uses the words "filed for record," yet the indorsement sufficiently indicates the day on which the paper was received in the office.

It was made his duty to keep the paper in his office for the inspection of all persons interested, yet he was not required to state all this in his indorsement.

The case of Brothers v. Mundell, to which we are referred by counsel, contains nothing inconsistent with these views. In that case the indorsement on a chattel mortgage showed that it had been "filed for record," and that it had been recorded in a book kept for the registry of deeds.

It was held that this did not show a compliance with the act of 1879 concerning chattel mortgages, and that the deed was properly rejected. (Brothers v. Mundell, 60 Tex., 240.)

In the present case the record book of chattel mortgages in which the entry was made was not produced, nor was there a certified copy of the registry produced; and if the proper objection had been made below when parol evidence was offered to prove the registry, the written evidence might have been produced. The objection will not be considered when made for the first time on appeal.

The sixth, seventh, eighth and ninth assignments relate to the charge of the court and to the charges asked by the defendants and refused.

The following charge was asked by the defendants and refused:

"You are instructed that if you believe from the evidence that at the time the mortgage read in evidence was executed it was the intention and purpose of J. G. Halsell, plaintiff, and Harry May, that the said Harry May should keep and retain possession of the goods mentioned in said mortgage, and continue in possession thereof, and control said business by selling the same, or any part thereof, in the regular course of business as a saloon-keeper, then you will find for the defendants, Cook & McElvey."

There was no error in refusing this charge.

The mortgagee might very properly leave in the possession of the mortgagor the property other than the liquors.

The following charge was given by the court on the same subject:

"6th. If you believe from the evidence in this case that it was the intention of said Halsell to permit the said May to continue in the possession of the liquors mentioned in the mortgage, and to sell the same in the ordinary course of trade, then as to such articles the said mortgage would be void, and you could not find for Halsell against Cook & McElvey for the value of the same."

The circumstances of the case were these:

The note was executed on the 15th day of February. It matured on the 1st day of September. The amount was $850. The whole

property mortgaged was not much in value beyond the amount of the note, and quite a large part of the property consisted of liquors.

All the liquors owned by the mortgagor were included in the mortgage; all were left in the saloon, and the only change which was wrought by the mortgage was that the letter "H" was placed upon the heads of the barrels which contained the liquors.

The mortgagor did not himself draw any liquor out of the barrels; he told his clerks not to do so; whether they did so or not, he does not know, but he does know that he did not buy any liquor after the date of the mortgage, and that the sales of drinks at the saloon after that date amounted to from thirty to fifty dollars per day.

Under these circumstances the court might well have made the charge much stronger; but even as it stands the verdict is clearly contrary to the evidence, and should have been set aside. (Peiser v. Peticolas, 50 Tex., 638; Scott v. Alford, 53 Tex., 82.)

Lastly, objection is made to the verdict and judgment.

There are, in fact, two judgments, each for the sum of $969, and no precautions are taken against the collection of both.

The verdict should have found the value of the various items of property replevied by appellants, as they had the right, by the statute, to return the whole property in satisfaction of the judgment, or a part of it in satisfaction *pro tanto*. (R. S., art. 4502; Hoeser v. Kraeka, 29 Tex., 450; Blakely v. Duncan, 4 Tex., 185; Bennet v. Butterworth, 8 Howard, U. S., 128.)

The judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted May 22, 1885.]