## In re RANEY.

## In re B. F. AVERY & SONS PLOW CO.

(District Court, N. D. Texas. February 14, 1912.)

No. 139, in Bankruptcy.

1. CHATTEL MORTGAGES (§ 6*)—"CONDITIONAL SALE CONTRACTS"—STATUTES.
Conditional contracts for the sale of personal property, reserving title in the seller until paid for, on being filed for record, became chattel mortgages, as provided by Rev. Civ. St. Tex. 1911, art. 5654, and are to be construed as such.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 23–41; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 2, pp. 1408–1410.]

2. CHATTEL MORTGAGES (§ 47*)—DESCRIPTION—SUFFICIENCY.
Where contracts for the sale of farm implements to the bankrupt, reserving title in the seller, which, on being filed, became chattel mortgages, as provided by Rev. Civ. St. Tex. 1911, art. 5654, described the property according to parts, and were sufficient to identify it, they were sufficient to create a lien on so much of the property as remained at the intervention of bankruptcy proceedings.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 87, 88, 96–103; Dec. Dig. § 47.*]

3. CHATTEL MORTGAGES (§ 101*)—AFTER-ACQUIRED PROPERTY—WHAT LAW GOVERNS.
Whether, and to what extent, a chattel mortgage on after-acquired property sold to the mortgagor in Texas is valid is a question to be determined by the Texas law.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 185, 186; Dec. Dig. § 101.*]

4. BANKRUPTCY (§ 184*)—CHATTEL MORTGAGES—EXTENT OF LIEN—AFTER-ACQUIRED PROPERTY—DESCRIPTION.
Where a contract for the sale of wagons and farm implements reserved a lien to the seller on the goods sold under the contract and on subsequent orders, such contract, though filed as a chattel mortgage, did not confer on the seller, as against the buyer's trustee in bankruptcy, a lien on implements and parts subsequently shipped to the bankrupt on orders made by letter or telephone during a period of more than 2½ years, concerning which there was no adequate identifying description.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

5. BANKRUPTCY (§ 184*)—CHATTEL MORTGAGES—AFTER-ACQUIRED PROPERTY—PROPERTY LEFT IN THE HANDS OF A MERCHANT FOR SALE.
Rev. St. Tex. 1895, art. 2548, provides that every mortgage or lien to be given by the owner of any stock of goods, wares, or merchandise daily exposed to sale, in parcels, in the regular course of business, and contemplating a continuance of possession of the goods and control of the business by a sale by the owner, shall be fraudulent and void. *Held*, that a provision in a contract of sale, retaining title, not only on the goods sold, but on all goods subsequently shipped, until all the buyer's indebtedness to the seller was paid, was an attempted reservation of title to all goods shipped, either under the particular contract or thereafter, and was therefore void as to goods in the hands of the buyer at

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the time of bankruptcy, not purchased by the particular contract reserving the lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

In Bankruptcy. In the matter of bankruptcy proceedings of J. R. Raney. On certificate of a referee to review allowance of a lien claim in favor of B. F. Avery & Sons Plow Company. Affirmed in part and reversed in part.

Spence, Knight, Baker & Harris, of Dallas, Tex., for claimant.

Harrison & Wayman, of Brownwood, Tex., for trustee in bankruptcy.

MEEK, District Judge. Claimant, B. F. Avery & Sons Plow Company, filed proof of a secured claim against the estate of J. R. Raney, bankrupt. The claim was for a balance remaining unpaid on the purchase price of certain wagons, plows, and other farm implements and parts thereof sold by claimant to the bankrupt. At the time of bankruptcy a part of these articles purchased from claimant remained undisposed of and in the possession of the bankrupt. The securities for its debt relied upon by the claimant are certain order contracts in writing, executed by the bankrupt and accepted by claimant, under and by virtue of the terms of which the title to the wagons, plows, and other farm implements and parts thereof is sought to be reserved in claimant until their purchase price shall have been fully paid. Attached to the proof of claim are three several order contracts. Also attached to and made a part of the proof of claim are numerous bills of goods sold by claimant to the bankrupt and shipped to the latter at Santa Anna, Tex. The dates of these bills run from June 29, 1908, to January 11, 1911. The testimony also reveals that a few parts of implements were shipped to bankrupt upon telephone orders. Included in the terms of each of these order contracts above referred to is the following provision:

"The title to and ownership of all goods which may be shipped under this contract, as well as all other goods shipped by you [meaning claimant] to me or us [meaning bankrupt] on subsequent orders, shall remain in you, and their proceeds in case of sale shall be your property, until all my or our indebtedness to you shall have been paid in money; but nothing herein contained shall release me or us from making payment as herein agreed."

These three order contracts were filed for registration as chattel mortgages in the office of the clerk of the county court of Coleman county, Tex., prior to the institution of bankruptcy proceedings. The trustee of the bankruptcy estate filed a contest before the referee of the claim of B. F. Avery & Sons Plow Company as a secured claim and contended: First. That the description of the articles included in the order contracts was not sufficiently definite for third persons to identify them; and therefore these contracts do not constitute valid chattel mortgages. Second. That if the description of the articles in the order contracts is sufficiently definite to support a lien, then claim-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ant's lien obtains only upon the particular articles shipped under a particular contract, and may not extend to all articles shipped under all contracts to secure the payment of the purchase price of articles shipped under a particular contract. Third. That claimant has no lien on articles shipped to bankrupt as the result of orders made by letter or over the telephone, by virtue of the above-quoted provision contained in the order contracts. The referee found in favor of the validity of claimant's lien upon all articles sold by claimant to bankrupt and in the latter's possession at the time of bankruptcy, whether sold under the order contracts or through orders made by letter or telephone. The referee directed the sale of these articles, and by proper order transferred and fixed the lien of claimant upon the proceeds of the sale. The trustee now asks a review of this order of the referee.

[1, 2] Under the provision of article 3327, Revised Statutes of Texas 1895 (now article 5654, Revised Civil Statutes 1911), the duly executed order contracts, in which the title to the wagons, farm implements, and parts thereof was reserved in the seller, became chattel mortgages, and are to be construed as such. These order contracts reveal the wagons and farm implements enumerated therein were to be shipped to J. R. Raney, Santa Anna, Tex. The description of these wagons and farm implements contained therein is very similar, if not identical, with the description of wagons contained in the order contract of Studebaker Bros., filed as a part of their proof of secured claim in this bankruptcy proceeding. The testimony as to identification is also similar, or to the same effect. I have this day held this description to be sufficiently definite. See In Matter of J. R. Raney, Bankrupt, In re Claim of Studebaker Bros., 202 Fed. 1000. The same ruling will be made here.

[3] The right, if any, of claimant to a lien upon the implements and parts shipped under one order contract for the purchase price of implements and parts shipped under another order contract, and the right, if any, of claimant to a lien upon the implements or parts shipped to bankrupt on orders made by letter or telephone, must rest upon the provision contained in the order contracts above quoted. By this provision it is sought to retain title in claimant to "all other goods shipped by you to me or us on subsequent orders." Whether, and to what extent, a chattel mortgage on after-acquired property is good is a question of local law for the Texas court to decide, and if it has ruled on the question it will be followed by this court. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956.

[4] The validity of an equitable lien upon after-acquired personal property has been recognized and announced by the Supreme Court of Texas in Richardson v. Washington, 88 Tex. 339, 31 S. W. 614; but it is also there announced that:

"The particular transaction must be such that the court can identify the particular property upon which the lien was intended to be created; and unless it can do so it will not fix and enforce a lien."

The leading case of Holroyd v. Marshall, 10 H. L. Cas. 191 (1862), which did so much to settle the doctrine of the validity of mortgages upon after-acquired personal property, recognized the necessity of specifically defining the goods or property, in order that they might be sufficiently identified as those intended to be mortgaged. Jones on Chattel Mortgages, § 172. As to the implements and parts shipped to bankrupt on orders made by letter or telephone, subsequently and apart from the order contracts, the essential element of description is lacking. The goods shipped included a great variety of farm implements and parts, and the shipments extended through more than 2½ years' time. As against the trustee of the bankruptcy estate, this absence of identifying description would be fatal to the lien attempted to be given claimant.

[5] But there is involved here a more serious question than this. By the above-quoted provision it is sought to retain a lien upon goods subsequently shipped, as well as upon goods shipped under the particular contract in which the provision occurs, "until all my indebtedness to you shall have been paid." This manifestly is more than a reservation of title in and to goods shipped until such time as the particular goods shipped under a particular contract are paid for. It is an attempted reservation of title to all goods shipped, either under the particular contract or subsequently, for "all my indebtedness to you"; and this whatever may have been the origin or the amount of the indebtedness. Such an attempt cannot be construed to be simply a reservation of title to secure the purchase price of particular goods, but, in addition, it must be construed to be an attempted creation of an equitable lien to secure all moneys then due or to become due.

Article 2548, Revised Statutes of Texas 1895, which is a re-enactment of section 17 of the Assignment Law of 1879, provides:

"Every mortgage, deed of trust, or other form of lien attempted to be given by the owner of any stock of goods, wares, or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void."

The wagons, implements, and parts thereof sold by claimant to J. R. Raney became a part of the latter's stock of goods, wares, and merchandise daily exposed to sale, in parcels, in the regular course of business. It was contemplated that Raney should continue in the possession of these goods and in the control of his business, and that he should continue to sell these goods. Discussing the provisions of article 2548, R. S. of Texas 1895, in the case of Avery & Sons v. Waples, 19 Tex. Civ. App. 672, 49 S. W. 151, Associate Justice Rainey says:

"The provision is plain and unambiguous. If the contract entered into between the hardware company and Avery & Sons falls within the scope of its provisions, we think it clear that said contract is of no force and effect as against the assignee. That it does, we think there can be no doubt. The property embraced in the contract was a part of the general stock of hardware and agricultural implements daily exposed to sale, in parcels, in the regular course of business. The Leeper Hardware Company was to re-

tain possession of the goods and control of the business, and continue to sell the goods. Bank v. Lovenberg, 63 Tex. 506; Cook v. Halsell, 65 Tex. 1; Duncan v. Taylor, 63 Tex. 645; Wilber v. Kray, 73 Tex. 533 [11 S. W. 540]. That the contract embraced only a part of the general stock is immaterial. If a part only was allowed to be mortgaged, the object of the statute could readily be defeated. The object of the statute was to prevent collusion between debtor and creditor to the prejudice of all others. Bank v. Lovenberg, 63 Tex. 506. If said provision of the statute should be construed so that all of the stock of goods must be embraced in the mortgage to make it void, the object for which it was enacted could readily be defeated by mortgaging the greater part thereof."

To the extent that the order contracts can be held to be a reservation by the vendor of the title to the particular wagons, implements, and parts thereof specified and enumerated in a particular contract and in possession of the bankrupt at the time of bankruptcy, I hold that the claimant is vested with a lien thereon, and is entitled to the amount for which they were sold. This is in accordance with the ruling of the Texas Supreme Court. Bowen v. Wagon Works, 91 Tex. 385, 43 S. W. 872. See, also, Meyer Bros. Drug Co. v. Pipkin Drug Co., 136 Fed. 396, 69 C. C. A. 240; Keeble v. John Deere Plow Co., 190 Fed. 1019, 111 C. C. A. 668; In re Jacobson & Perrill (D. C.) 200 Fed. 812. But as to the wagons, implements, and parts thereof on hand at the time of bankruptcy, upon which the bankrupt attempted to give an equitable lien through the medium of the above oft referred to provision of the order contracts, I hold that, as against the trustee, claimant has no valid lien, save as to the particular goods described in the particular order contracts covering them.

I will not undertake to declare from the record before me upon what particular goods of the bankrupt the claimant was entitled to a lien, nor to what moneys it is entitled as the result of the sale of the goods by the trustee under order of the referee. The burden of proof is upon claimant to establish what goods were on hand at the time of bankruptcy, and to which it is entitled to a lien under the view expressed in this opinion; also to show to what moneys it is entitled resulting from the sale of the goods.

An appropriate order will be entered, giving effect to the views expressed, and returning the record to the referee for further proceedings in conformity therewith.