## J. R. GREEN v. BEAR BROS. & HIRSCH, ET AL.

### SUPREME COURT, GALVESTON TERM, 1883.

*Landlord's Lien—Statute Construed*—Under a lease of premises for three years, rents payable monthly, the landlord has not such a preference lien provided for in Art. 3122 *a* R. S. It was not the intention of the legislature to give a preference lien for all rents that might by possibility become due under a contract like this, but only such rents as were due and accruing and becoming due at the next date of payment as therein fixed.

*Same—Injunction.*—The writ of injunction granted in this case had for its object the staying of proceedings in certain suits then pending in the district court of Galveston county. The language of the statute admits of no question or doubt, that such writ could only be returnable to, and tried in the court wherein the suit enjoined is pending. (R. S. Art. 2880.)

Appeal from the district court of McLennan county. Opinion by Watts, J. Adopted.

### STATEMENT.

Mark & Kempner and Focke & Wilkins had instituted suits in the district court of Galveston county against Bear Bros. and Hirsch, residents of McLennan county, and caused writs of attachment to issue to McLennan county, by which the property in question had been seized, after which Root & Dow and Milby & Porter instituted suits against the same defendants, also obtained attachments which were levied upon the property. After which, on October 30, 1880, appellant applied to a justice of the peace of McLennan county for a distress warrant against Bear Bros. & Hirsch, on a claim for rent for $3,262, of which $116.50 was then due, and it was claimed was to become due. This distress warrant was issued and levied upon the property in controversy and returned into the district court of McLennan county.

Appellant, on the first day of the next term of said district court, November 1, filed his petition, setting out his cause of action, and on the 3d day of November, 1880, filed under leave, his first amended original petition, in which he sets out the written contract of lease between plaintiffs and defendants, Bear Bros. & Hirsch, which was executed and delivered December 16, 1879, being a lease of a certain store house in said lease described, for a term of three years from

January 1, 1880, for which said lessees were to pay rent monthly at the rate of $116.50 per month, the first install-ment on the first day of February after, and the same amount to be paid on the 1st of each succeeding month, with the usual covenants to pay rent and to surrender at the end of the term, and not to alter the premises without consent. Plaintiff alleged the issuance and levy of said distress war-rant, but that said levy was not sufficient to satisfy his de-mand for reasons shown ; that Marx & Kempner, Root & Dow, Focke & Wilkins and Milby and Porter, alleged cred-itors of said lessees, had, severally, about October 30, 1880, levied writs of attachment on all of the property of said defendants on said premises ; that two of said writs were issued out of the district court of Galveston county, one at the suit of Marx & Kempner, and another at the suit of said Focke & Wilkins, and that two of said writs of attachment were issued out of the county court of McLennan county, one at the suit of Root & Dow, and one at the suit of said Milby & Porter ; that plaintiff's land-lord's lien is superior to said attachment liens, and that he fears that said attaching parties will waste said property, and that the same will, by the further action of said parties, in prosecuting their attachment suits, and procuring orders for sale of property as perishable, be lost to plaintiff before the determination of this suit.

Plaintiff asks that said attaching plaintiffs be made par-ties defendant and enjoined from the further prosecution of said attachments upon said property until the final adjudi-cation of plaintiff's lien ; asked that said lien be declared superior to said attachment liens, and that a writ of seques-tration issue to seize said property on said premises not levied upon by said distress warrant, a list of which is given, and that the same be subjected to plaintiff's lien. Plaintiff alleges his debt is part due and prays for judgment, and that said property be condemned and sold ; that a receiver be appointed, and that the proceeds of said property be ap-propriated to the payment of his debt as it becomes due, etc. ; he also prayed for general relief. Writs of injunction and sequestration were accordingly issued and returned into the district court of McLennan county.

On May 5, 1881, Marx & Kempner filed a general demur-rer and a special plea, the contents of which are immaterial,

inasmuch as the judgment of the court was upon the demurrers of defendants, and said answer was not sworn to, and therefore could not have been considered by the court. And on the same day they filed a motion to dissolve the injunction, assigning sundry causes, amounting to a demurrer, which are apparent in the various propositions of appellant. On May 10, Bear Bros. & Hirsch, defendants, filed a general denial. The other attaching defendants also filed a general demurrer, and a special answer not sworn to, and they also filed a motion to dissolve the injunction because of insufficiency of petition and want of jurisdiction. On the 29th day of June, 1881, came on to be heard the motions of said defendants to dissolve the injunction, and their demurrers, and it was adjudged that the injunction be dissolved ; that the demurrers to the amended original petition of plaintiff be sustained, and that said petition be dismissed, and that the plaintiff take nothing, and that the defendants go hence and recover costs, from which judgment plaintiff appealed. The points presented by the assignment of error are these :

1. The court erred in quashing the writ of sequestration.
2. The court erred in dissolving the writ of injunction.
3. The court erred in sustaining the demurrers and dismissing the petition.

### OPINION.

In disposing of this appeal it becomes necessary to construe that section of our statute giving to landlords a lien upon the property of the tenant, for rents due and to become due, for any residence or storehouse or other building, in conjunction with the contract of lease upon which the appellant predicates his rights.

The statute is in these words : "Art. 3122, a. All persons leasing or renting any residence, or storehouse or other building, shall have a preference lien upon all the proper.y of the tenant in said residence, or storehouse or other building, for the payment of the rents due and that may become due, and such lien shall continue and be in force so long as the tenant shall occupy the rented premises and for one month thereafter." The provisions of the contract of lease which are material are as follows : "To have and to hold unto them, the said parties of the second part, for the full term of three years from said first day of January, 1880,

provided, however, that said party of the second part shall well and truly pay to the party of the first part the sum of $116.50 monthly as a rental for said property." And again: "And the said parties of the second part do hereby covenant, agree and promise to pay to said Jacob R. Green, $116.50 on the first day of February, 1880, and monthly thereafter." The point presented by appellant and urged as ground for reversal is this: that under the provisions of this contract of lease, and by virtue of the above quoted article, he had a preference lien upon all the property of the tenant in the rented house for the payment of the rent then due and accruing and to become due, and all rents that might by possibility become due under the contract. Is the statute subject to that construction? We think not.

Such a construction would equally apply to a lease for fifty, as for three years. The stated periods for the payment of rents under the contract is so clearly and definitely fixed as to admit of no question that rent due for each month is to be paid on the first day of the succeeding month. It was not the intention of the legislature to give a preference lien for all rents that might by possibility become due under a contract like this, but only such rents as were due and accruing and becoming due at the next date of payment as therein fixed, or if the renting were either expressly or impliedly by the year, rents accruing and to become due on the first day of January thereafter. For instance, there being nothing in the terms of this lease, or in its nature, to indicate an annual renting at the time appellant commenced this proceeding by distress warrant, the rent for the month of September was then due, and that for October was accruing and would become due on the first day of November. But under the contract of lease the rent for November or any subsequent month, was not then accruing, and within the meaning of the statute to become due. It might be that before such rent commenced to accrue, that the relation of landlord, and tenant would cease by the mutual consent of the parties or be determined by ouster on a title superior to that of the landlord as well as in other ways. At common law a distress warrant could only be taken for rent in arrears, none could be taken for rents to accrue. Our statute in this respect is an innovation upon the common law, but that fact does not affect the rule of construction. The car-

dinal rule of construction is given in Sec. 3, final title of the Revised Statutes in these words: "Sec. 3. That the rule of the common law that statutes in derogation thereof shall be strictly construed, shall have no application to the Revised Statutes, but the said statutes shall constitute the law of this state respecting the subject to which they relate, and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

As before remarked, it does not seem to us, that the legislature intended to give a lien upon the property of the tenant for rents that might, by possibility, become due under a lease contract like the one before the court. Certainly the construction contended for by appellant, instead of promoting justice, would often result in the most cruel injustice to the tenant. If, as in this case, the tenant fails to pay at the stated period fixed for payment, under that construction of the law the landlord could distrain his goods for the rent then due, and that those accruing and all that might, by possibility, become due under the lease contract, thus placing his entire available property in the hand of the law, there to be held from year to year, and in this way depriving him of all means available to meet these possible rents. And, in short, thus wrenching from him his substance and sending him forth a bankrupt. Such results were never contemplated by the legislature. These are not the characteristics of the justice that a liberal construction of our statutes was intended to promote. As was said by Justice Bonner in Rosenberg v. Shaper, 51 Texas, p. 141: "It has long been the settled policy of the law to give all landlords security and speedy enforcement, by stringent remedies for the rent which may be due them."

But in giving this security and these summary remedies, it has never been the policy of the law to extend them further than to rents due and accruing and to become due, in accordance with the lease contract, or in case of an annual renting, to become due at the beginning of the next rental year.

This continuing contract could not be specifically enforced in advance for these possible future rents. A breach of it might afford an action for damages but not for the unaccrued rents. If the construction of article 3122, limiting, in certain cases, "the rents that may become due," to those

becoming due at the next day of payment fixed in the lease, be questionable, it does not admit of doubt but that the lien could not be extended beyond the first day of January next, after the rents sued for commenced to accrue. If, as seems to be taken for granted in the articles added by way of amendment, the original act related to rural property, farms, etc., as species of renting which is necessarily by the year, then by the fairest implication the lien for rents that may become due therein given, should not be extended beyond the end of one year. The latter clause of article 3122b is as follows : "The object of this and the preceding article being to extend the operation of such law so as to include and protect liens on residences and storehouses and other buildings occupied or used by tenants, and conferring on the owners thereof the same rights and priveliges as are now conferred by law on other landlords." The effect of this provision is, as therein expressed, to place renting of residences and storehouses upon the same footing as the leasing and renting of farms etc. Our statute provides that writs of injunction granted to stay proceedings in a suit, or execution on a judgment, shall be returnable to, and tried in the court where such suit is pending, or such judgment was rendered. (Rev. Stats. Art. 2880.)

The writ of injunction granted in this case had for its object the staying of proceedings in certain suits then pending in the district court of Galveston county. The language of the statute admits of no question or doubt that such writ could only be returnable to, and tried in the court wherein the suit enjoined is pending. This cause is unlike that of Crow v. Red River Co. Bank, 52 Tex. 362, cited and relied upon by appellant. Here, if the claim, as to amount, asserted by appellant could have been maintained, then the jurisdiction of the district court of Galveston county was ample to afford him the remedies sought. Having acquired jurisdiction of the property, that court could have issued all writs necessary to enforce that jurisdiction.

We are of the opinion that the court did not err in quashing the writ of sequestration and in dissolving the writ of injunction, and as the court had no jurisdiction of appellant's claim it correctly sustained the demurrer and dismissed the petition.

The judgment ought to be affirmed.